IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

HILDA L. SOLIS,  
  Secretary of Labor,  
  United States Department of Labor,

    Plaintiff

v.      CIVIL NO. JKB-09-3375

LOCAL 9477,  
UNITED STEELWORKERS,

    Defendant

## MEMORANDUM

In this action, the Secretary of Labor, Ms. Hilda L. Solis ("the Secretary"), seeks to overturn a union election conducted by Local 9477 of United Steelworkers. Her motion for summary judgment (ECF No. 26) is pending before the Court. It has been thoroughly briefed (ECF Nos. 31 & 34), and no hearing is necessary, Local Rule 105.6. The motion will be granted.

### *I. Standard for Summary Judgment*

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing predecessor to current Rule 56(a)). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, the "mere

existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment. *Id.* at 252. The facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to the opposing party, *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008), who may not rest upon the mere allegations or denials of his pleading but instead must, by affidavit or other evidentiary showing, set out specific facts showing a genuine dispute for trial, Fed. R. Civ. P. 56(c)(1). Supporting and opposing affidavits are to be made on personal knowledge, contain such facts as would be admissible in evidence, and show affirmatively the competence of the affiant to testify to the matters stated in the affidavit. Rule 56(c)(4).

## II. Background

Defendant Local 9477 has not disputed that it is subject to the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA") or that the union officer election it conducted on April 20, 2009, at the Severstal Sparrows Point Plant ("Sparrows Point") in Maryland was subject to the LMRDA's prohibition on contribution of employer funds to promote any individual's candidacy. The two slates of candidates in that election were the Incumbent Slate, known as the Red, White, and Blue ("incumbent slate"), and the Insurgent Slate, known as the United Steelworkers for Action ("insurgent slate"). The incumbent slate won the offices of president, vice president, financial secretary, treasurer, outside and inside guards, and first and second trustees. The only offices won by the insurgent slate were recording secretary and grievance committee chair. (Pl.'s Mot. Summ. J. Supp. Mem. 3, ECF No. 26.) In addition to the general election, Local 9477 conducted several zone elections, and the incumbent slate won four of those elections. (*Id.* 4.) Three of the four zone elections are covered by this motion: Zone 1, Zone 3, and Zone 7. (*Id.*) James Blankenship, the candidate for Local 9477 president on the

2

insurgent slate, filed a written protest concerning the election and later filed an administrative complaint with the Secretary. (*Id.*)

## III. Analysis

To ensure free and fair union elections, the LMRDA provides,

> [N]o moneys of an employer shall be contributed or applied to promote the candidacy of any person in any election . . . .

29 U.S.C. § 481(g).

The Department of Labor promulgated a regulation designed to clarify this statutory ban on use of employer resources in union elections:

> As an additional safeguard, section 401(g) provides that no money of an employer is to be contributed or applied to promote the candidacy of any person in an election subject to the provisions of Title IV. **This includes indirect as well as direct expenditures.** Thus, for example, campaigning by union stewards on company time with the approval of the employer would violate section 401(g) unless it can be shown that they are on legitimate work assignments, and that their campaign activities are only incidental to the performance of their assigned task and do not interfere with its performance. **This prohibition against the use of employer money includes any costs incurred by an employer, or anything of value contributed by an employer, in order to support the candidacy of any individual in an election.** It would not, however, extend to ordinary business practices which result in conferring a benefit, such as, for example, a discount on the cost of printing campaign literature which is made available on the same terms to other customers.

29 C.F.R. § 452.78(a) (emphasis added).

No minimum amount is required before this prohibition is applied. *See Shultz v. Local Union 6799, United Steelworkers of America*, 426 F.2d 969, 972 (9th Cir. 1970) ("The legislative history of the Act does not indicate that Congress . . . meant to encourage troublesome factual disputes over how much (or little) money constitutes a 'de minimis' amount; and the language of the provision itself is clear and unambiguous."). Thus, *any* use of employer resources to promote a candidate's campaign is prohibited. *Donovan v. Local Union 70, Int'l Bhd. of Teamsters*, 661 F.2d 1199, 1202 (9th Cir. 1981) ("'Moneys,' as used within § 401(g), has

3

been interpreted as anything of value, whether the expenditure be direct or indirect."); *Donovan v. Local 738, Int'l Union United Auto., Aerospace, and Agric. Workers of America*, 575 F. Supp. 52, 55 (D. Md. 1983) (use of employer's equipment to type and photocopy endorsement letter violated LMRDA).

Local 9477 does not dispute that Sparrow Point's facsimile ("fax") machines, copiers, computers, and email system were utilized on behalf of candidates in the time leading up to the election. Examples of conduct drawing the attention of the Secretary of Labor were the faxed transmission of a biography of the incumbent slate's candidate for vice president, Jeff Mikula (Def.'s Opp. 2-3, ECF No. 31); the mass photocopying of the Mikula flier and a letter from the incumbent president, John Cirri, that raised questions about the United Steelworkers for Action, who, apparently after the letter was written, formed the insurgent slate (*id.* 4-5); and an email message to fourteen employees to ask them to hand out campaign literature, which included copies of a second Cirri letter (*id.* 9). Although Local 9477 disputes the conclusions to be drawn from the facts, its arguments are groundless.

Local 9477 speculates that some of the improper usage may be attributable to the insurgent slate as an act of revenge (Def.'s Opp. 4-8), and perhaps it was, but that does not excuse the improper usage attributable to Local 9477's incumbent slate. The violation of this statute does not hinge upon motive of the violator. Nor would improper usage for a vengeful motive nullify the clear violation of the LMRDA by the incumbent slate's usage of employer resources in the union election.

Next, Local 9477 argues the email message had no effect on the election. (*Id.* 9.) The standard is whether a violation may have affected an election. 29 U.S.C. § 482(c)(2). If a violation of LMRDA is shown by the preponderance of the evidence, then a prima facie case has been established. *Wirtz v. Hotel, Motel and Club Emp. Union, Local 6*, 391 U.S. 492, 506-07

(1968). The burden then shifts to the defendant to produce evidence to support a finding that the violation did not affect the result. *Id.* at 507. The union rests its argument on the theory that use of an employer's email system has not been held to constitute a violation of the LMRDA and on the wholly unsupported assertion that the use of the email system in this instance had no effect on the outcome of the election. As to the first point, the Court discerns no legal distinction between use of an email system to promote someone's candidacy and use of a fax machine or photocopier to do the same. Accordingly, the Court holds that use of an employer's email system to promote a candidate in a union election constitutes a violation of the LMRDA. As for the second point, Local 9477 has produced no evidence to rebut the prima facie case established by the LMRDA violation. It simply notes the email message was sent to fourteen people asking them to hand out campaign literature and somehow deduces from that the conclusion that the message did not affect the election's outcome. As noted, this deduction has no evidentiary support. Local 9477 has, therefore, failed to rebut the prima facie case. Consequently, the Secretary has established the email message may have affected the outcome of the union election. Regardless of the result reached on this one violation, the other statutory violations are well established and provide an independent basis for concluding the election was not free and fair as the LMRDA contemplates.

Local 9477's last argument is that any violations by the incumbent slate of the LMRDA were "more than offset" by violations of the statute by the insurgent slate. (Def.'s Opp. 10.) It then goes on to cite a number of instances in which the insurgent slate put up stickers in the areas frequented by employees, used the company's golf cart and a company truck to travel to a different department to campaign and to distribute campaign literature, and utilized the company's telephone system, photocopy machines, and email system for campaign purposes.

5

(*Id.* 11-16.) Local 9477 cites two cases to support its argument, but those cases arise in a significantly different procedural posture and do not support the union's position.

In the first, *Bernsen v. U.S. Dept. of Labor*, 979 F. Supp. 32 (D.D.C. 1997), the defendant Department of Labor determined that opposing candidates' violations of the LMRDA offset each other and had no net effect on the outcome of the union election, thus concluding the election should not be overturned. The district court there held the defendant's use of a "net effect" analysis was rational and defensible and was neither arbitrary nor capricious nor contrary to law. *Id.* at 38. The instant case arrives at this Court's doorstep in a different manner. In this case, the Secretary has not rendered a decision that is in issue and, thus, would be subject to the Court's review. In contrast, this case presents, through complaint of the Secretary, the issue for the Court to decide of whether the violations of the LMRDA may have affected the outcome of the election. The fact that the Secretary *did not* use the "net effect" analysis is not a procedural misstep such that this Court should order not only the use of the analysis but also to conclude no net effect occurred. The Secretary is accorded a measure of discretion under the LMRDA in the investigation of complaints under the Act to determine whether probable cause exists to support an enforcement action. 29 U.S.C. §§ 482(b), 521(a). *See also Dunlop v. Bachowski*, 421 U.S. 560, 571 (1975) (referring to discretion of Secretary to determine probable violation of LMRDA), *overruled in part on other grounds by Local No. 82, Furniture and Piano Moving v. Crowley*, 467 U.S. 526, 550 n.22 (1984). That a "net effect" analysis has been used by the Secretary in other circumstances does not mandate its use here. The *Bernsen* case does not require a different conclusion.

Local 9477 also cites *Shelley v. Brock*, 793 F.2d 1368 (D.C. Cir. 1986). In *Shelley*, the Secretary had declined to bring suit to set aside a union election, and union members sought a writ of mandamus to compel suit for alleged LMRDA violations. The *Shelley* court noted the

*Bachowski* case had held that the Secretary's decision must rest upon a statement of reasons that can be reviewed by a court, *id.* at 1372-73 (citing 467 U.S. at 571), and found the Secretary's reasons insufficient for the court to determine if the Secretary applied the statutory standard to his determination, *id.* at 1374. In another aspect of the case, the Secretary had found similar violations by both the opposition and the incumbent slates; hence, he stated he was "'unable to conclude that the violations had any actual effect on the outcome of the election.'" The court found the Secretary's determination "was a reasonable exercise of the expert discretion entrusted to him," but criticized the Secretary's statement as an "inelegant" expression of what he should have concluded explicitly, i.e., that a violation probably did not have an effect on the election. *Id.* at 1377. What the *Shelley* case does not stand for, however, is a mandate to utilize a "net effect" analysis, and the Court sees no reason to impose such a mandate. Indeed, a violation by the insurgent slate is as much a violation of the LMRDA as it is by the incumbent slate. Thus, neither of the cases relied upon by the union is procedurally apposite to the instant case or substantively persuasive.

### III. Conclusion

The Secretary has, with good reason, sought this Court's aid in ensuring a union election that complies with the LMRDA. No genuine dispute of material fact exists, and the Secretary is entitled to judgment as a matter of law. Her motion for summary judgment will be granted.

DATED this  21st  day of July, 2011.

                                                                 BY THE COURT:

                                                                  /s/
                                                       James K. Bredar
                                                       United States District Judge