IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| HILDA L. SOLIS,<br>  Secretary of Labor,<br>  United States Department of Labor,<br><br>          Plaintiff,<br><br>     v.<br><br>LOCAL 9477, UNITED STEELWORKERS,<br><br>          Defendant. | )<br>)<br>)<br>)<br>)<br>) Civil No. JKB-09-3375<br>)<br>)<br>)<br>)<br>) |

## DECLARATION OF PATRICIA FOX

I, Patricia Fox, am the Chief of the Division of Enforcement, Office of Labor-Management Standards (OLMS), United States Department of Labor (Department). The Department supervised an election of officers of Defendant Local 9477, United Steelworkers Union (Local 9477), which was completed on April 16, 2012, pursuant to an August 22, 2011 Consent Order issued by this Court.

At Local 9477's regular membership meeting held on February 20, 2012, an announcement was made inviting all interested parties to a pre-election conference to be held February 29, 2012. The announcement was also emailed to members and distributed at the Sparrows Point (employer) work sites. The conference provided attendees the opportunity to participate in formulating the election rules by presenting materials or comments.

Geneva Ferrando, an OLMS investigator designated as the election supervisor (Election Supervisor), had the authority and responsibility for implementing all aspects of the supervised election. At the February 29, 2012 pre-election conference, the Election Supervisor advised attendees that the Department was responsible for assuring the conduct of a fair election under the Labor-Management

Reporting and Disclosure Act of 1959 (Act), and, insofar as lawful and practicable, in accordance with provisions of United Steelworkers' Constitution (International Constitution), the Local Union Elections Manual adopted by the International Executive Board (Elections Manual), Local 9477's Bylaws, and the election rules that would be established for this supervised election. The Election Supervisor explained the rules of the supervised election, including nomination procedures, candidate eligibility rules, campaigning rules, election procedures including voter eligibility, protest procedures, and the time frame for conducting various aspects of the supervised election.

A combined notice of nominations and election was mailed to all members on March 6, 2012. The notice was also mailed to local officers, zone committeemen, and amalgamated presidents to post and distribute at the employer work sites.

On March 15, 2012, written election rules (Election Rules) established by the Election Supervisor for this election were emailed to interested parties who had provided their email addresses at the pre-election conference. In addition, copies of the Election Rules were distributed to all nominees at the March 19, 2012 nominations meeting. In addition to the nomination of candidates, election committee members were appointed at that meeting.

The election was held on April 16, 2012, at the union hall. Polls were open from 6:00 am to 8:00 pm. The Election Supervisor and another Department official, along with election committee members, and the local's office secretaries worked at the polls the entire day. Members voted on electronic voting machines supplied by Electec, an election company hired by the union. Electec technicians remained at the polling site all day to resolve any issues regarding voting machines. Also present were two observers who remained in contact not only with the election committee but also with the Election Supervisor throughout the day.

The supervised election was conducted for the offices of President, Vice President, Financial Secretary, Treasurer, Recording Secretary, Inside Guard, Outside Guard, Trustee (3), Guide, Grievance Committee Chair; Committeepersons for Zones 1 through 7. There was only one slate in the election, the Steelworkers Coalition, consisting of members who challenged former and current officers of Local 9477. There was no incumbent for the office of President, but incumbents ran for the offices of Vice President, Treasurer, Recording Secretary, Grievance Committee Chair, and Grievance Committeepersons for Zones 1, 4, 5, and 6. Fourteen Steelworkers Coalition members won office, two of whom ran unopposed. The candidates who won the election are identified in the certification.

The Department received two pre-election protests, one dated March 28, 2012, from Roger Church, one of three candidates for Zone 7 Committeeperson and the other dated April 14, 2012 from John Cirri, one of six candidates for President. In addition, the Department received a post-election protest by telefax dated April 24, 2012, from Howard Salvino, another candidate for President. The substance of the allegations in the protests is summarized below, followed by the Department's resolution of each allegation.

Roger Church's pre-election protest dated March 28, 2012

Allegation: Chris Paul was not eligible to run for the office of Zone 7 Grievance Committeeman because he had accepted a position in a training program that effectively transferred him out of Zone 7, thereby vitiating his membership in that zone. Under the Basic Labor Agreement, the established time frame allowing a transferee to return to his home unit is 30 days and Paul exceeded that time frame.

Response: Section 401(e) of the LMRDA provides, in relevant part, that "every member in good standing shall be eligible to be a candidate (subject to . . . reasonable qualifications uniformly imposed)." Article VII, Section 9 of the Constitution of International Union, United Steelworkers

3

(International Constitution) requires members to be in continuous good standing for 24 months in order to run for office, among other requirements not relevant here. The continuous good standing requirement is recited in part at Number 7 of the Election Rules. The Election Manual specifies that the continuous good standing requirement encompasses a requirement that a candidate running for Zone Grievance Committeeperson must be a member in the zone in which he or she seeks to run.

The Election Supervisor determined that Paul's eligibility to run for office was contingent on whether he would be a member of Zone 7 on the day of the election, April 16, 2012. The investigation disclosed that Paul, who worked in Mobile Equipment, a department within Zone 7, had accepted a position in a training program to become a maintenance technician outside Zone 7. Local 9477 and the employer executed a Training Agreement, Article XII, Section C of which provides, in relevant part:

> If a trainee elects to disqualify him/herself with-in the first 90 days of the program, or if the training committee disqualifies a trainee with-in 90 days, said trainee will return to his/her home unit at his/her incumbent position held prior to entering the program.

The training program commenced on December 12, 2011, but was disrupted by a plant shut down on December 23, 2011. The Training Program re-commenced on January 30, 2012. Both the local and the employer took the reasonable position that the time during the shutdown of the plant would not be included in calculating the 90-day period. Accordingly, the end of the 90-day period fell on April 16, 2012. Paul submitted his resignation from the Training Program on April 15, 2012, thereby returning to his home zone within the 90-day period. Consequently, Paul was eligible to run for office as he was a member of Zone 7 on the day of the April 16, 2012 election. There was no violation.

John Cirri's April 14, 2012 pre-election protest

Allegation: The Steelworkers Coalition slate used the International's logo in its modified sample ballot, thereby giving the impression that the International endorsed their candidacies.

4

Response: Section 401(g) of the Act prohibits, among other things, the use of union funds to promote any member's candidacy. 29 U.S.C. § 481(g). This prohibition is broadly construed to prohibit any use of union property. The use of a union's logo may violate this prohibition where the union has a proprietary interest in the logo, the member did not obtain International's permission to use the logo, and the logo is used in a manner that implies that the union is endorsing or promoting the candidate.

The investigation disclosed that the sample ballot contained the names of every candidate listed for each contested and uncontested positions. The sample ballot also displayed the International's logo in the upper right hand corner. On April 11, 2012, the Election Supervisor emailed an electronic copy of the sample ballot to all candidates, election committee members, and other interested members who had provided their email addresses to the Election Supervisor at any point in the supervised election. In addition, on Friday, April 13, 2012, Election Committee members posted the sample ballot at various locations throughout the Sparrows Point facility. The Steelworkers Coalition, the only slate for this election, modified a copy of that sample ballot so that the names of its slate members were highlighted while the names of all other candidates were cast in a grey tone. The Steelworkers Coalition distributed the altered sample ballots at the Sparrows Point plant on Friday, April 13, 2012.

The International's Constitution and Election Manual do not prohibit the use of the International's logo. The International therefore does not appear to have a proprietary interest in its logo. Further, nothing in the altered sample ballot gave any indication that the International supported the candidates whose names were highlighted. The logo was on all sample ballots and the campaign tactic of highlighting the names of slate members in no way changed the impact of the logo or gave the appearance that the International was endorsing the Steelworkers Coalition slate. There was no violation.

5

Howard Salvino's April 24, 2012 post-election protest

Allegation: The Steelworkers Coalition slate modified the sample ballot so that it misrepresented the candidates running for office, serving to confuse voters on precisely who was running for each office.

Response: Section 401(c) of the Act requires unions to provide adequate safeguards to ensure a fair election. 29 U.S.C. § 481(c). A union's wide range of discretion concerning the conduct of its elections is circumscribed by a general rule of fairness. 29 C.F.R. § 452.110.

The investigation disclosed that a list of the names of candidates running for each office was available to members weeks prior to the election. The Election Supervisor emailed a list of candidates' names to all candidates and election committee members on March 30, 2012. In that email, the Election Supervisor instructed the election committee to post the list of candidates on bulletin boards in their work areas. Election committee members complied. In addition, copies of the unaltered sample ballot were posted and distributed on Friday, April 13, 2012. Further, the altered sample ballot, described above, was campaign material produced by the Steelworkers Coalition slate. The Act does not regulate the contents of campaign material. 29 C.F.R. § 452.70. There was no violation.

Allegation: Joe Rosel, John Cirri, and Tyrone Lewis had an advantage over other candidates because they were in positions that provided jobs to amalgamated members, who in turn would provide their vote in exchange for continued work.

Response: Prior to the election, Rosel and Cirri served as contract coordinators, whose duties involved interacting with the employer in the approval of contract positions. Lewis was the incumbent Grievance Committee chair. There is nothing that indicates that the exercise of the duties of these positions is in any way contrary to the Act. Salvino offered no evidence that any of the three candidates

in question acted in a manner that was contrary to law and the investigation did not disclose such evidence. There was no violation.

Allegation:   Joe Rosel, John Cirri, and Tyrone Lewis were paid for 48 hours a week by the employer and were therefore more loyal to the employer than the union.

Response:   All Local 9477 members are paid by the employer. Further, there is no indication that the Act prohibits the payments complained of by Salvino or that there was any activity relating to these payments that violated the Act.

The Department has concluded from its investigation that Local 9477's April 16, 2012 election of officers, conducted under the Department's supervision, complied with Title IV of the Act and was conducted, insofar as lawful and practicable, in accordance with Local 9477's Constitution, the International Constitution, and the Act. Therefore, no reason exists to overturn the results of this supervised election.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 20th day of June, 2012, in the City of Washington, District of Columbia.

*Patricia Fox*
Patricia Fox, Chief
Division of Enforcement
Office of Labor-Management Standards
United States Department of Labor